## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

RACHEL E. PERRY,

        Plaintiff,

v.                                CIVIL ACTION NO.  2:13-cv-13598

CHARLESTON AREA MEDICAL CENTER, INC.,

        Defendant.

### MEMORANDUM OPINION & ORDER

Now before the court is Charleston Area Medical Center, Inc.'s Motion for Summary Judgment [Docket 21]. The motion is ripe for review. For the reasons set forth below, the motion is **GRANTED**.

### I.  Background and Undisputed Facts

This is an employment discrimination case filed by the plaintiff, Rachel E. Perry, against Charleston Area Medical Center, Inc. ("CAMC"). CAMC employed Ms. Perry beginning in 2009, and employed her as a Registered Nurse beginning in April 2009. (*See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") [Docket 23], at 2). In October 2012, CAMC granted Ms. Perry's request for intermittent leave under the Family and Medical Leave Act ("FMLA") due to herniated disks in her back. (*See id.*; Cert. of Health Care Provider for Employee's Serious Health Condition ("FMLA Cert.") [Docket 23-2], at 1). According to Ms. Perry's physician, she would have "episodic flare-ups" because of her back injury that would prevent her from performing her

job functions. (FMLA Cert. [Docket 23-2], at 2, 3). Ms. Perry's physician stated these flare-ups would occur approximately one time per month. (*Id.* at 3).

CAMC provided Ms. Perry with a form informing her of her FMLA rights after her request for leave was granted. (*See* FMLA Rights & Responsibilities [Docket 21-5]). This form stated:

> For leave not foreseeable, you must comply with usual and customary call-in procedures for reporting an absence, absent unusual circumstances. Although an employee may have an approved/active intermittent FML letter, the employee must continue to give this same advance notice to the department designee when 'calling off' for all or any part of a scheduled shift.

(*Id.*). CAMC required Registered Nurses to call in two hours before the start of their scheduled shift. (*See* Policy Manual [Docket 21-6]). The purpose of that rule is "[t]o provide sufficient time to ensure adequate staffing for all shifts." (*Id.*). Ms. Perry was aware of the policy and its purpose. (*See* Perry Dep. [Docket 21-1], at 15:24-17:4). Under CAMC's attendance policy, employees receive occurrences for absences and tardiness. Employees receiving occurrences under the attendance and tardiness policy were to be given a verbal warning, a written warning, a second written warning, and then discharged. (*See* Dec. 4, 2012 Employee Attendance/Tardy Discipline Form [Docket 21-7]). If a Registered Nurse calls in within two hours of her shift, it is treated as two occurrences. (*See* Edwards Dep. [Docket 23-4], at 51:4-51:9).

Ms. Perry received her second written warning on September 11, 2012, prior to taking FMLA leave. (*See* Sept. 11, 2012 Employee Attendance/Tardy Discipline Form [Docket 21-4]). On December 4, 2012, Ms. Perry was scheduled to begin her shift at 7:00 a.m. (*See* Burkholder Dep. [Docket 23-3], at 38:2-4). Ms. Perry states that when she woke up at 6:00 a.m., she could barely walk and made the decision to call CAMC and tell them she would be unable to work that day. (*See id.* at 38:7-13). She called CAMC at 6:05 a.m. (*See id.* at 39:4-6). Ms. Perry knew that

2

she was violating the call-in policy and that the call-in policy was applicable to her while she was on intermittent leave, but stated that it was "out of [her] control." (*Id.* at 39:10-15). This was counted as two occurrences against Ms. Perry. (*See* Dec. 4, 2012 Employee Attendance/Tardy Discipline Form [Docket 21-7]). On the following day, Ms. Perry was discharged. (*See id.*). The form provided by CAMC indicates that Ms. Perry was discharged for her failure to follow department call-in policy. (*See id.*). Ms. Perry argues that she was discharged because of her disability, in violation of the West Virginia Human Rights Act ("WVHRA") and FMLA.

## II.     Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of

3

evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III. Discussion

In the Complaint, Ms. Perry asserted the following claims against CAMC: (1) violation of the WVHRA, W. Va. Code § 5-11-9; (2) violation of the interference provision of the FMLA, 29 U.S.C. § 2615(a)(1); (3) violation of the retaliation provision of the FMLA, 29 U.S.C. § 2615(a)(2); (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. (*See* Compl. [Docket 1-1]). Ms. Perry has agreed to voluntarily dismiss Counts IV and V. (*See* Pl.'s Resp. [Docket 23], at 13). Therefore, I will only address CAMC's motion for summary judgment with regard to the remaining claims.

#### A. Discrimination under the WVHRA

Ms. Perry argues that she was unlawfully discriminated against because of her disability, in violation of the WVHRA. The WVHRA provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled[.]" W. Va. Code § 5-11-9(1).

> In order to make a prima facie case of employment discrimination under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq. (1979), the plaintiff must offer proof of the following:

>   (1) That the plaintiff is a member of a protected class.
>
>   (2) That the employer made an adverse decision concerning the plaintiff.
>
>   (3) But for the plaintiff's protected status, the adverse decision would not have been made.

Syl. Pt. 3, *Conaway v. E. Associated Coal Corp.*, 358 S.E.2d 423, 425 (W. Va. 1986). After a prima facie case is established, "[t]he complainant's prima facie case of disparate-treatment employment discrimination can be rebutted by the employer's presentation of evidence showing a legitimate and nondiscriminatory reason for the employment-related decision in question which is sufficient to overcome the inference of discriminatory intent." Syl. Pt. 2, *W. Va. Inst. of Tech. v. W. Va. Human Rights Comm'n*, 383 S.E.2d 490, 491 (W. Va. 1989).

It is undisputed that Ms. Perry can establish a prima facie case against CAMC. Additionally, it is clear that CAMC has presented evidence of a legitimate and nondiscriminatory reason for Mr. Perry's termination—her failure to adhere to CAMC's call-in policy for Registered Nurses. Once a plaintiff's prima facie case has been rebutted, "the inquiry proceeds to a new level of specificity." *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 582 (W. Va. 1996) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981) (internal quotation marks omitted). At that point, "the onus is once again on the employee to [provide evidence] that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action." *Id.* "[A]t all times the burden of proof or the risk of nonpersuasion on the issue of whether the employer intended to discriminate remains on the plaintiff." *Id.*

Ms. Perry argues that she has presented a genuine issue of material fact regarding pretext because CAMC never considered whether her absence was an "unusual circumstance" provided for in the form CAMC gave her to outline her rights and responsibilities while on intermittent

5

leave. This form stated that "[f]or leave not foreseeable, you must comply with usual and customary call-in procedures for reporting an absence, *absent unusual circumstances*." (FMLA Rights & Responsibilities [Docket 21-5]) (emphasis added). Ms. Perry also provides testimony indicating that CAMC could have let her retroactively use an emergency day for one of her absences, and in that case she would not have been terminated. (*See* Burkholder Dep. [Docket 23-3], at 45:2-47:3). Ms. Perry additionally argues that CAMC's call-in policy is not always strictly adhered to. She bases this argument on the fact that in 2010, before she was put on intermittent leave, she did not receive a warning for violating the policy. (*See* Edwards Dep. [Docket 23-4], 59:11-23). However, it also appears to be undisputed that Ms. Perry had received a verbal warning, written warning, and second written warning prior to taking FMLA leave. (*See* Sept. 11, 2012 Employee Attendance/Tardy Discipline Form [Docket 21-4]).

None of these facts demonstrate pretext. "To get to the jury, the employee must offer sufficient evidence that the employer's explanation was pretextual to create an issue of fact." *Skaggs*, 479 S.E.2d at 583. Here, there is simply no evidence, either direct or indirect, that indicates CAMC fired Ms. Perry for any reason other than her failure to follow its call-in procedure. Notably, "a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.* at 585 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Nothing in the record indicates that Ms. Perry's disability had any effect on her employment status at CAMC. At the summary judgment stage, "[w]hile the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some concrete evidence from which a reasonable finder of fact could return a verdict in its favor or other significant probative evidence

tending to support the complaint." *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 336-37 (W. Va. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)) (internal quotation marks omitted).

Ms. Perry also argues that CAMC violated her rights under the WVHRA by refusing to provide her with a reasonable accommodation. The Supreme Court of Appeals of West Virginia has recognized a claim for breach of duty of reasonable accommodation under the FMLA.

> To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W. Va. Code, 5-11-9 (1992), a plaintiff must allege the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.

Syl. Pt. 1, *Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331, 332 (W. Va. 1999). However, Ms. Perry has not demonstrated that she required an accommodation in order to perform the essential functions of her job. Ms. Perry does not argue that she could not work or follow CAMC's call-in procedures because her back pain was too sudden. During her deposition, Ms. Perry indicated that the only reason she did not call in two hours early was because she did not wake up with sufficient time to do so.

> Q. Okay. So December—you were scheduled to start your shift on December 4, 2012, at 7 a.m. Correct?
>
> A. Yes.
>
> Q. What time did you wake up?
>
> A. Six o'clock. When I woke up, I could barely walk. I could barely walk, and I went to the restroom. When I came back from the restroom, I made the decision to call work and let them know that I would be unable to make it

7

>   because I was not functional, and rather than injure myself attempting to work, I called in late.
>
> . . .
>
> Q. So you knew when you called in after 6—[d]o you know exactly what time you called in?
>
> A. I believe it was 6:05.
>
> Q. Okay. That you were violating the call-in policy when you called in?
>
> A. Yes, I did.
>
> Q. And you understood when you called in that you still—even though you had FMLA, you still needed to abide by the call-in policy. Correct?
>
> A. Yes, but unfortunately it was out of my control. I would have had to purposely set my alarm for earlier than I normally wake up.
>
> Q. Why wouldn't you do that? Knowing that you were dealing with back issues, knowing you could violate the call-in policy, knowing that you had received your second written warning, why wouldn't you do that?
>
> A. I thought it more important to be well-rested for a shift rather than to wake up early every single day on the off chance that I might not be able to make it to work. I mean, for 10 years to wake up an hour early just in case, that's a little excessive.

(Perry Dep. [Docket 21-1], at 38:2-39:24). If Ms. Perry's back pain were sudden and unpredictable, perhaps it would be an "unusual circumstance" and require CAMC to depart from its normal attendance policies. However, Ms. Perry does not argue that her pain is sudden, and does not dispute the fact that she would have been able to follow CAMC's policy if she had woken up one hour earlier. (*See* Perry Dep. [Docket 21-1], at 38:2-29:24). Ms. Perry's case can be likened to the case of a person who comes down with the flu overnight. A person may not be able to predict the night before if she is going to wake up with the flu; however, she can prevent disobeying the call-in policy by waking up more than two hours before her shift is scheduled to begin.

8

CAMC's employment policy is burdensome and it is easy to understand why Ms. Perry did not want to wake up before 5:00 a.m. However, CAMC has good reason for the policy. That reason is stated on the policy itself, which notes that its purpose is "[t]o provide sufficient time to ensure adequate staffing for all shifts." (Policy Manual [Docket 21-6]). It is important for a hospital to ensure that it has a sufficient number of Registered Nurses working on any given shift. While the policy may be harsh, it is nonetheless reasonable considering CAMC's needs. And in this case, Ms. Perry has not presented any evidence that she should have been exempted from the standard procedure.

Based upon the foregoing, I **FIND** that Ms. Perry has not presented evidence indicating that CAMC's proffered reason for her termination was a pretext for discrimination.

### B. FMLA Claims

Ms. Perry brings claims for interference and retaliation under the FMLA. Interference claims arise under 29 U.S.C. § 2615(a)(1), which makes it illegal for an employer to deny an employee the protective rights set out by the FMLA, such as twelve weeks of leave time and job protection while on leave. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). An interference claim, then, requires the plaintiff to show that she was entitled to rights or protections under the FMLA. Retaliation claims, also known as discrimination claims, arise under 29 U.S.C. § 2615(a)(2), which makes it illegal for an employer to fire an employee "for opposing any practice made unlawful by" the FMLA. *See Yashenko*, 446 F.3d at 546. In other words, a retaliation claim arises when an employee is discharged for demanding the rights to which she is entitled under the FMLA.

9

### 1. Interference

Ms. Perry argues that CAMC unlawfully interfered with her FMLA rights. "[T]o proceed on an interference claim asserting a violation of substantive rights under the FMLA, an employee bears the burden of proof in establishing that he is entitled to the benefit at issue under the statute[.]" *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 549 (4th Cir. 2006). Importantly, "FMLA leave does not provide an employee any greater rights than he or she would have had without taking leave." *Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013). CAMC argues that it properly terminated Ms. Perry's employment for her failure to adhere to its ordinary call-in procedures.

> The regulations accompanying the FMLA state that:
>
> *An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.* For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. An employee also may be required by an employer's policy to contact a specific individual. Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full. *Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied.*

29 C.F.R. § 825.302(d) (emphasis added). Other courts have considered this regulation and found that "an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave, unless unusual circumstances justify the employee's failure to comply with the employer's requirements." *Srouder v. Dana Light Axle Mfg.*, 725 F.3d 608, 615 (6th Cir. 2013). Ms. Perry argues that whether her circumstances constitute an

"unusual circumstance" is a question for the jury. However, Ms. Perry has presented no evidence that her situation should be considered an unusual circumstance. Indeed, Ms. Perry's deposition indicates that she was aware of and able to complete the steps she would have to take to comply with CAMC's call-in procedures yet failed to do so. (*See* Perry Dep. [Docket 21-1], at 38:2-39:24).

Although what constitutes an "unusual circumstance" would normally be a question for the jury, the plaintiff is still required to come forward with some evidence showing that an unusual circumstance existed. *See, e.g.*, *Srouder*, 725 F3d at 615 (finding that an employer was justified for terminating an employee and upholding a grant of summary judgment where the employee "produced no evidence demonstrating the type of 'unusual circumstance' that would have justified his failure to follow the call-in requirements"); *Goff v. Singing River Health Sys.*, No. 1:13CV96-LG-JMR, 2014 WL 991724, at *5 (S.D. Miss. Mar. 13, 2014) ("Without any evidence to present to a jury regarding whether unusual circumstances existed that would excuse her failure to comply with [her employer's] call-in policy, [the plaintiff] cannot show a question of material fact on this issue."). In this case, Ms. Perry has not produced any evidence to support her claim, and has actually admitted that she could have prevented violating the call-in policy simply by waking up earlier. (*See* Perry Dep. [Docket 21-1], at 38:2-39:24).

After reviewing all of the evidence, I **FIND** that Ms. Perry has not demonstrated a genuine issue of material fact with regard to her claim of interference with her FMLA rights.

### 2. Retaliation

Ms. Perry also argues that CAMC unlawfully retaliated against her for asserting her FMLA rights. "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 800-06 (1973)." *Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 550-51 (4th Cir. 2006). This is similar to the framework for analyzing a claim of discrimination under the WVHRA, discussed *supra*. Once again, it is undisputed that Ms. Perry has established a prima facie case and it is clear that CAMC has produced a non-discriminatory motive for its employment decision. "If an FMLA plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and the employer offers a non-discriminatory explanation for the plaintiff's termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). As with Ms. Perry's WVHRA claim, I **FIND** Ms. Perry has not presented evidence that CAMC's proffered reason for her termination was a pretext for discrimination.

    **IV.**    **Conclusion**

For the reasons discussed above, Charleston Area Medical Center, Inc.'s Motion for Summary Judgment [Docket 21] is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    May 23, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE